**NORTHERN NATURAL GAS COMPANY, a Corporation, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

Nos. 14706, 14733, 14743.

United States Court of Appeals
Eighth Circuit.

Oct. 7, 1954.

---

See also 215 F.2d 176.

Jay Kyle, Gen. Counsel, Topeka, Kan., for State Corp. Commission of Kan.

F. Vinson Roach, Omaha, Neb., for Northern Natural Gas Co.

Rueben H. Goldberg, Washington, D. C., for Federal Power Commission.

P. L. Farnand and G. T. Mullin, Minneapolis, Minn., for Minneapolis Gas Co.

George C. Pardee, Omaha, Neb., for Metropolitan Utilities Dist. of Omaha, Neb.

Raymond A. Smith, Council Bluffs, Iowa, for Council Bluffs Gas Co.

Carl W. Cummins, St. Paul, Minn., for Northern States Power Co.

Norman H. Nitzkowski, Mankato, Minn., John W. Scott, Bradford Ross, Washington, D. C., for Minnesota Valley Natural Gas Co.

Lloyd J. Marti, Lincoln, Neb., for Central Electric & Gas Co.

Carsten L. Jacobson, Asst. City Atty., Minneapolis, Minn., for City of Minneapolis.

Marshall Hurley, St. Paul, Minn., for City of St. Paul.

Clement F. Springer and Francis T. Crowe, Chicago, Ill., for Interstate Power Co.

Hubert C. Jones, Des Moines, Iowa, for Iowa Power & Light Co. and Peoples Gas & Electric Co.

John F. Gaston, Jr., Cedar Rapids, Iowa, for Iowa Electric Light & Power Co. and Northwestern Light & Power Co.

Byron L. Sifford and Vernon Myers, Sioux City, Iowa, for Iowa Public Service Co.

Ned Willis, Perry, Iowa, for Perry Gas Co.

Arthur C. Sidner, Fremont, Neb., for Nebraska Natural Gas Co.

Clayton Kline, Topeka, Kan., for Kansas Power & Light Co.

Rodger L. Nordbye, Minneapolis, Minn., for Minnesota Natural Gas Co.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

PER CURIAM.

These cases came on for hearing on the motion of Minnesota Valley Natural Gas Company, a customer of Northern Natural Gas Company and an Intervenor in these proceedings, and nine other customer intervenors[1] for themselves and on behalf of seventeen other customers of Northern Natural Gas Company that have intervened later in the review proceedings herein,[2] for an order directing Northern to distribute the fund of $7,-641,993.48, which the court finds Northern has collected under the stay order of this court entered herein on December 18th, 1952, plus interest at 6%, to the customers of Northern from which the moneys were collected. All of the customers of Northern who contributed to the said fund have intervened and joined in the motion and the amount each contributed has been agreed upon and is hereinafter made the subject of finding by the court.

1. Iowa Public Service Company; Minneapolis Gas Company; Iowa Power & Light Company; Metropolitan Utilities District of Omaha; Central Electric & Gas Company; Northern States Power Company; Council Bluffs Gas Company; Western States Utilities Company; Perry Gas Company.

2. Board of Water, Electric, Gas & Power Commissioners of Austin, Minnesota; Central Natural Gas Company; Town of Coon Rapids, Iowa; Elkhorn Valley Gas Company; City of Guthrie Center, Iowa; Interstate Power Company; Iowa Electric Light & Power Company; Iowa-Illinois Gas & Electric Company; Kansas Power & Light Company; Minnesota Natural Gas Company; Municipal Public Utilities of Owatonna, Minnesota; Nebraska Natural Gas Company; Northwestern Light & Power Company; Village of Pender; Peoples' Gas & Electric, a division of Kansas City Power & Light Company; City of Ponca, Nebraska; Public Utilities Commission, New Ulm, Minnesota.

The stay order herein provided, among other things, that Northern should file a bond conditioned generally for the refunding, with interest, to the utility distributing companies, intervenors herein, of such revenues as would be collected by it under the stay and to which it might ultimately be determined that Northern was not legally entitled. The order further, however, expressly stated that this general provision for payment was intended merely as a tentative or present direction to Northern and was not to have the effect, as far as the utility distributing companies were concerned, of vesting any right in them to the excess revenues.

The practical object which the court had in mind and its relationship to the accomplishment of the purposes of the Act were stated in the order as follows: "The present direction of such payment has been made because the situation, on the hearing of the motion for stay, impressed as being one in which disposition of the question of the validity of the Federal Power Commission's order would be capable of being effected in this Court within a comparatively short period of time, so that the stay order as such would not in any event have to be continued long in effect; that it further seemed likely that the utility distributing companies would not have been able during that period to have secured generally from all of the local city councils or other regulatory bodies involved [i. e. those having jurisdiction over the rates of the utility distributing companies], authority to make corresponding increases in their present rates, enabling them to pass on fully to ultimate consumers as a class the amount of the increase paid by them to Northern Natural during the stay period; and that in these circumstances and under these conditions, even if some part of the increase paid to Northern Natural might have been able to be passed on by some utility distributing company to some ultimate consumers the amount involved as to any such ultimate consumers individually for such brief period would be so small as

not to warrant the Court, as a matter of practical judicial administration and in relation to the inabsoluteness inherent anyway in any utility charges [of a distributor subject only to local regulation in its rates] of assuming the burden of sifting out such individual ultimate consumers and attempting to make a trivial or nominal distribution to them."

As a precaution and safeguard, however, against these assumptions not proving to be the facts, under the conditions obtaining at the time the stay should be terminated, the order further provided that the court, in order to prevent any utility distributing company from acquiring what might amount to a windfall or unwarranted enrichment, reserved jurisdiction "to impose conditions upon the acceptance of such funds by any utility distributing company as shall be just and equitable in relation to its consumer customers, such as requiring it as a condition of acceptance and receipt to make refund to its customers, with reasonable allowance [to it] out of the funds and interest so received by it, to cover the cost of such distribution."

And, as an ultimate, contingent protection, the order also provided that, "In the event of any * * * unforeseen complication, resulting in the refusal of any utility distributing company to accept such funds upon the conditions fixed, the Court may direct Northern Natural to make payment of the excess revenue and interest as to any such particular utility distributing company to the Clerk of this Court or to a Custodian named by the Court, instead of direct to such utility distributing company," together with a reservation of jurisdiction generally "to make all orders necessary to effect final and complete disposition of any such funds * * *."

Eight of the 27 distributors here involved are municipalities or municipal corporations, as to which we agree with the position of the Federal Power Commission that an unconditional order of refund and receipt is proper, because, as stated by the Commission in its response to the motion for distribution, "in the

case of each such entity the sums [of refund] received and retained will be used for the benefit of the ultimate users of gas in the communities served or will be for the benefit of the community," and "The aim of the Natural Gas Act 'to protect ultimate consumers of natural gas from excessive charges' * * * will be, therefore, substantially fulfilled."

Of the other 19 distributors, two —Kansas Power & Light Company and Perry Gas Company—have made showing that they have made no rate increases to their customers of any kind during the period of the stay, and so have not passed along the amount paid by them to Northern under the stay, and as to these we similarly hold that they too are entitled to an unconditional order of refund and receipt. A third distributor, Council Bluffs Gas Company, has made an increase in its retail gas rates during the stay period but it is shown that this increase did not include the factor of Northern's rate increase under the stay, so that the amount paid by it under the stay has not been attempted to be passed on to its customers, and the City Council having jurisdiction of the Gas Company's rates has so agreed. It is accordingly held that Council Bluffs Gas Company also is entitled to an unconditional order of refund and receipt.

Of the remaining 16 distributors, six—Iowa Electric Light & Power Company, Iowa-Illinois Gas & Electric Company, Iowa Power & Light Company, Minnesota Valley Natural Gas Company, Northern States Power Company, and Peoples Gas & Electric Company—have made showing that they have made no rate increases during the period of the stay to firm gas customers, but that they did increase rates to interruptible or industrial gas customers, and to electric service customers, under escalator clause contracts, the amount of which increases they are willing and propose to refund. Each of such distributors is held to be entitled to an order of refund and right to receive the amounts collected by Northern from them under the stay, subject to an obligation and duty on the part of each to make refund to the interruptible or industrial gas customers and to the electric service customers involved, of the amounts so collected from them on the basis of and in accordance with their escalator-clause contracts.

This leaves 10 distributors, consisting of Minnesota Natural Gas Company, Central Electric & Gas Company, Central Natural Gas Company, Elkhorn Valley Gas Company, Interstate Power Company, Iowa Public Service Company, Minneapolis Gas Company, Nebraska Natural Gas Company, Northwestern Light and Power Company, and Western States Utilities Company, all of whom have made some rate increase, in relation to the increase of Northern involved in the stay, to both firm customers and to interruptible, industrial, or contract customers. The increases to the latter type of customers are shown to have been made under an escalator clause in their agreements, carrying with it either an express or an implied obligation to account to such customer for any refund received from Northern of the increase so made by the distributor. Each of such distributors is held to be entitled to an order of refund and right of receipt as to the amounts so applicable to its interruptible, industrial, or contract customers, subject to an obligation and duty on the part of each distributor to make payment thereof to such customers.

As to the amounts collected by such 10 distributors from their firm customers or consumers, under rate increases put into effect by them and thus passing on, in whole or part, the payments made by them to Northern pursuant to the stay, Minnesota Natural Gas Company has made showing that it is willing and proposes to make refund to its firm customers or consumers of these amounts. Minnesota Natural Gas Company is accordingly held to be entitled to an order of refund and right of receipt as to such amounts, subject to the obligation and duty on its part of making refund to its firm customers or consumers.

As to the other 9 of such distributors, all, except Minneapolis Gas Company,

which will be dealt with separately, will similarly, as in the case of Minnesota Natural Gas Company, be held entitled to an order of refund and right of receipt as to the amounts involved in the stay fund which have been passed on by them to their firm customers or consumers, subject to the obligation and the duty on their part of making refund to such customers or consumers.

■ In the case of Minneapolis Gas Company, it is shown that its operations are carried on under a City Division, covering the corporate limits of the City of Minneapolis, Minnesota, and a Suburban Division, covering the suburban area adjacent to that City. Under the Company's franchise in the City of Minneapolis, the rates charged customers of its City Division are subject to supervision by the City, through its Utility Engineer, in that he has the power to alter, amend or revise any change in rates made by the Company, which do not conform, in their result, to the amount of the fixed general allowable return, the prescribed return on cost of additions, extensions, improvements and betterments, and the fixed return on working capital provided for in the franchise. Such rate increases as have been made by the Company during the stay period appear from the affidavit of the City Utility Engineer to have been made within his supervision and in relation to the duty imposed upon him by resolution of the City Council "to advise the City Attorney and City Council generally in alterations, amendments or revisions in any change in rates made by Minneapolis Gas Company." Moreover, the City of Minneapolis has directly participated in the proceedings before the Federal Power Commission, and as an intervenor in this Court, on the rate increase made by Northern that is here involved. It further is shown from the affidavit of the City Utility Engineer that the City has full knowledge of the amount of the refund for which the Company is making claim and that "the City will insist that (the sum applicable to the Company's City Division) shall be treated in a manner so as to re-

flect benefits to the full extent of said sum for the ultimate consumers within the City of Minneapolis in a manner that will reduce and eliminate violent fluctuations in the rates charged by the Minneapolis Gas Company." The Company also states in its showing that it "makes no claim that it, as a corporate entity, is entitled to said sum for the purpose of increasing the allowable annual return as provided in said franchise ordinances," and that "All of said sum, therefore, will be used by said company for the benefit of the ultimate consumers in the City Division, in conformity with the provisions of said franchise ordinance of the City of Minneapolis."

In the local relationship thus existing between the Company and the City, from the matter of franchise provisions, right of supervision and assumed responsibility as to the rates of the Company, as well as in view of the knowledge of the City of the amount of the refund here involved and of its expressed intent to deal therewith "in a manner so as to reflect benefits to the full extent of said sum for the ultimate consumers within the City of Minneapolis," we think the purposes of the Natural Gas Act, 15 U.S.C.A. § 717 et seq., of safeguarding ultimate consumers generally, will be sufficiently and appropriately served by allowing the Company to receive the amount of the refund applicable to the City Division, subject only to such direction and control thereover as shall be exercised by the City of Minneapolis under the franchise ordinances, for the benefit of the ultimate consumers within the City.

■ As to the Suburban Division of the Minneapolis Gas Company, however, just as in the case of the other 9 distributors in its class, as previously referred to, no such showing of existing power, franchise relationship, or exercised responsibility, on the part of a city council or other local regulatory body, is sufficiently satisfactorily shown to warrant us in judicially permitting the amount passed on to firm customers or consumers to be received by the Company without

condition. As to such funds, applicable to its Suburban Division, the Minneapolis Gas Company will be held entitled to an order of refund and right of receipt, subject to the obligation and duty of making refund to its firm customers or consumers.

■ All of the preceding provisions herein are expressly made subject to the following expressions, limitations and conditions, to the extent that they are not inapplicable to any of the situations involved:

(1) All refunds made by any distributor to interruptible or industrial customers, under its escalator-clause agreements, shall include the amount received by such distributor from Northern in interest thereon.

■ (2) To the extent that any distributor may have used gas for the production by itself of electric energy, steam, etc., which it has been engaged in selling as a separate activity, and may have passed on the gas-rate increase involved herein in the sale of such product, the distributor shall have an obligation and duty hereunder only to make such refund as it may be required to do by its contracts, or as it may otherwise have committed itself to make, together with the interest received thereon from Northern. The court does not regard it as being within the purposes of the Natural Gas Act, as contended by the Federal Power Commission, for it to engage in collateral concern about reaching the profits which an intrastate distributor may have derived from such activities, through the use of gas and the relationship of the price thereof to such profit— any more than it is entitled to have concern about what the effect of the refund here involved made to an industrial customer of a distributor may economically be.

■ (3) The refunds ordered to be made to firm customers or consumers shall have application only to those persons or companies which are still customers or patrons of the distributor. The task of trying to locate persons who are no longer customers or patrons of the distributor involved, the heavy expense incident thereto, and the impossibility in the end of finding a substantial part of such persons, as shown by the court's experience in similar cases in the past, make such an attempt, in relation to the small amounts usually involved in the refunds to such persons, and to the judicial burden resulting, impractical, unfeasible, and unnecessary to an accomplishment generally of the purposes of the Natural Gas Act. The funds which would be applicable to such persons, if they were still customers of the distributor, shall be used and applied as provided for in paragraphs (5) and (7) following.

(4) As to the refunds required to be made to any distributor's firm customers or consumers, the distributor shall calculate the amount to which each such present customer is entitled, and the amount of the interest received from Northern allocable to such amount, and shall make report to the court, before payment thereof, of the total number and amount of such refund payments involved (not names or list of customers), of the total amount of the interest received from Northern allocable thereto, of the amount of the refund in its hands from customers who are no longer patrons of the distributor, and of the amount of the interest received from Northern allocable thereto. Such report shall be filed with the Clerk of this Court, in quadruplicate, within 90 days after the receipt of the funds and interest from Northern, as hereinafter directed.

■ (5) The report referred to in paragraph (4) shall also set forth what the distributor regards as the reasonable cost or expense to it of having made the refund and interest calculations, and of effecting distribution thereof, on the basis of crediting the customer's account in such amount as the Court may direct, and not on the basis of making refund by mail and check. Upon receipt and consideration of the reports referred to, the court may allow such amount as it deems reasonable, in reimbursement of cost and

expense as above indicated, out of the interest, and/or out of the funds applicable to persons who are no longer customers of the distributor.

(6) A further report shall be filed with the Clerk of this Court, in quadruplicate, within six months of the date hereof, by each distributor required to make refunds hereunder to either contract customers, or firm customers, or both, showing the total amount of refund and interest paid by it to each class of customers.

(7) The court reserves jurisdiction to make such further orders in relation to the situation of each distributor as may be necessary or expedient to finally terminate and close the entire matter. This includes the right to direct such ultimate disposition of the refunds and interest applicable to persons who are no longer customers of the distributor, as to the court may seem just and equitable. This reservation is made on the basis of the stay order having been specifically designed to avoid the recognition or vesting of any right in anyone as to the funds involved, except as such rights afterwards should be recognized and established by order of the court, in the light of persuading equities and practical administrative realities. No right is accordingly recognized by the court as existing in any ultimate consumer by virtue of the operation of the stay order, except as herein declared and established.

(8) As to the part of the refund and interest applicable to any calendar month or months of the stay period, during which a distributor had not yet put into effect a rate increase equal to the amount payable by it to Northern for such period on the basis of the stay order, such distributor is entitled to refund and right of receipt, without condition, just as in the case of the distributors who made no rate increase whatever during the period of the stay. Some of the distributors have contended for a right to apply the refund and interest, in whole or in part, toward an alleged insufficiency in income or return, for a period or periods prior to the placing in effect by them of their increased rates. But that question is not one of judicial concern, in the attempt simply to restore the situation, as equitably as practicably possible, to the same status as would have existed, if the stay order had not been issued. With or without the stay, the relief of a distributor, from the condition of which complaint is now made, if it existed, is one which lay in other fields. We do not at all examine the question of any distributor's income or return, and it is our intention to prevent any part of the returned funds and the interest thereon from being used, or being available to be used, in any manner, to offset or make up for any insufficiency of income or return that was suffered prior to the issuance of the stay order, or that is not directly attributable to having been required to pay Northern's increased rate and having had its revenues diminished to that extent as a result thereof, during the stay period.

In relation to all of the foregoing, the court finds that there is due from Northern Natural Gas Company, in refund, to each of the 27 distributors referred to above, the amount set out opposite the name of each below, which amount Northern is ordered and directed to turn over or tender to such distributor, within 15 days from the date of this order, together with interest thereon from the date of the receipt of such funds by Northern to August 17, 1954, as follows:

Board of Water, Electric, Gas
  &amp; Power Commissioners of
    Austin, Minnesota ........ $  104,651.28
Central Electric & Gas Co...   931,707.42
Central Natural Gas Co......   31,126.69
City of Guthrie Center, Iowa   743.37
City of Ponca, Nebraska....   3,311.84
Council Bluffs Gas Co.......   144,328.13
Elkhorn Valley Gas Co......   7,741.65
Interstate Power Co........   105,768.81
Iowa Electric Light & Power
  Co.
  (Including  Iowa   Electric
    Co.) .................   302,644.16
Iowa-Illinois Gas & Electric
  Co. ....................   261,919.39

| | |
|---|---|
| Iowa Power & Light Co..... | 573,718.76 |
| Iowa Public Service Co...... | 571,175.23 |
| Kansas Power & Light Co... | 50,571.07 |
| Metropolitan Utilities District of Omaha .............. | 648,122.65 |
| Minneapolis Gas Co......... | 2,025,319.70 |
| Minnesota Natural Gas Co... | 51,117.54 |
| Minnesota Valley Natural Gas Co. ................ | 317,754.03 |
| Municipal Public Utilities of Owatonna, Minnesota..... | 42,564.28 |
| Nebraska Natural Gas Co.... | 83,211.66 |
| Northern States Power Co... | 938,117.21 |
| Northwestern Light & Power Co. .................... | 21,295.08 |
| Peoples' Gas & Electric..... | 321,970.10 |
| Perry Gas Co.............. | 17,259.69 |
| Public Utilities Commission, New Ulm, Minnesota..... | 36,074.53 |
| Town of Coon Rapids, Iowa | 1,541.08 |
| Village of Pender, Nebraska | 5,189.01 |
| Western States Utilities Co. | 43,049.12 |
| Total ............. | $7,641,993.48 |

The accumulation of interest against Northern has been cut off as of the date of the denial of its motion for an allowance, in effect, from the stay funds, on August 17, 1954, since which date Northern appears to have stood ready to make the refunds, as soon as the court so directed. Delay in making the present order of direction, since that time, has been due to the complications existing in the distributors' situations and to the efforts of the court to intelligently resolve them as a basis for authorizing the distributions to be made.

Upon showing made by Northern that the amounts have been paid as herein directed, accompanied by receipts of the various distributors, setting out separately the amount of the refund and the amount of the interest paid, an order will be entered discharging Northern and its surety from any further liability on account of the stay order and the funds collected by it thereunder. Ruling upon the motion of the Intervenors for a judgment against Northern and its surety will be reserved and only entered in case this becomes necessary. Acceptance of the funds and interest by any distributor, upon tender by Northern, shall bind such distributor to the conditions of this order, as applicable to it. In the event of the refusal of any distributor to accept the funds upon the conditions herein, report of such fact shall be made by Northern promptly to the court, and jurisdiction is reserved to deal with the situation on the basis of the provisions of the stay order applicable to that contingency.

All of which is so ordered.