NORTHERN NATURAL GAS COMPANY, a Corporation, Petitioner,

v.

FEDERAL POWER COMMISSION, Respondent.

Nos. 14706, 14733, 14743.

United States Court of Appeals Eighth Circuit.

Sept. 16, 1955.

---

On requests of Intervenor-Distributors for allowances as expenses of making refunds to customers, and containing other distribution directions.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

1. Our previous order herein of October 7, 1954, 215 F.2d 892, directed each of 10 Intervenor—Distributors (Central Electric and Gas Co., Central Natural Gas Co., Elkhorn Valley Gas Co., Interstate Power Co., Iowa Public Service Co., Minneapolis Gas Co., Minnesota Natural Gas Co., Nebraska Natural Gas Co., Northwestern Light and Power Co., and Western States Utilities Co.) to make calculation of the amounts which it had collected in increased rates, during the stay period, from each of its firm customers, who constituted present gas consumers, under the test of being still patrons of the distributor, and of the interest allocable thereto, which amounts and interest would be included in the sum that we required Northern Natural Gas Co. to repay to such distributors and which they were to be permitted under our order to receive and give receipt for.

2. We provided in our order for the filing of a report by each distributor, after such calculations had been made, supplying us with information as to the number of customers covered by the calculations and of the total amount of funds involved therein, and also as to what sum, out of the increased-rate funds collected by the distributor from its firm customers and directed by us to be paid over to it by Northern Natural, would on this basis, together with the interest applicable thereto, be left in the distributor's hands in relation to persons who had ceased to be its customers—with a further requirement in our order that the distributor also should set out in its report what it regarded as the reasonable

cost and expense to it of having made the calculations above referred to and of thereafter, on the court's order, effecting refunds to such present firm customers "on the basis of crediting the customer's account in such amount as the Court may direct, and not on the basis of making refund by mail and check." 215 F.2d at page 900.

3. The distributors referred to thereafter filed such reports, showing receipt of these funds from Northern Natural and the calculations which they had made in respect thereto, and we thereupon set the matter down for hearing and supportive showing on what allowances ought fairly to be made in the situation to the distributors, "in reimbursement of cost and expense", out of the funds, as contemplated by our previous order, that would on this basis be remaining in their hands from the rate increases made against persons who had since ceased to be customers of the distributors, and to such further extent, if any, as might prove to be necessary, out of the amount of the refunds which we otherwise intended to permit to be made to those who were still customers of the distributor. This is the question which now, after the holding of such a hearing, is before us for consideration and disposition.

4. The question, of course, is merely one of the aspects or incidents of the general purpose and plan of our previous order to effect an equitable, practical and complete disposition of all of the funds collected under our stay order, and hence there must correlatively be kept in mind, in dealing with it, the whole of that objective and its ultimate accomplishment. In order that the channel thus being traveled may be kept entirely clear and the general flow thereof may, as part of the present consideration, be properly fostered, it is perhaps desirable to repeat and reemphasize some of the things said in our previous order and also to add any further facilitating directions that may presently seem necessary, under our previously reserved, administering jurisdiction.

5. Such action as has heretofore been or as may hereafter be taken by us in the situation is predicated perspectively, as we have heretofore declared, 215 F.2d at page 901, "on the basis of the stay order having been specifically designed to avoid the recognition or vesting of any right in anyone as to the funds involved, except as such rights afterwards should be recognized and established by order of the court, in the light of persuading equities and practical administrative realities". We further directly stated and held that "No (legal) right is accordingly recognized by the court as existing in any ultimate consumer by virtue of the operation of the stay order * * *". Ibid.

6. In what has thus far been done in the situation, we have refused to allow Northern Natural to reap any possible benefit from having obtained the stay order or from the rate increases which it put into effect thereunder. It also has been our purpose, on the situation which obtained at the time our stay order terminated, similarly not to permit any distributor to profit pecuniarily from such rate increases as it had made to its gas customers in relation to Northern Natural's increases under the stay. At the same time, as we have above indicated, in granting the stay and allowing the fund to accumulate, we did so on the basis and condition that, not alone no distributors, but no ultimate consumer either, should have or be able to claim any legal right as such to any part of the funds which we were allowing Northern Natural to collect and accumulate, and that, if it ultimately became necessary for us to have to make disposition of the fund, we thus would be left free, and would have a responsibility only, to effect such a disposition as would in the situation substantially, equitably, and subject to administrative practicalities, serve the purposes of the Natural Gas Act, 15 U.S.C.A. § 717 et seq., generally.

7. In the judicial, administrative and equitable realities involved in the existing circumstances, the effect of our order of October 7, 1954 was to find and hold, and we again affirm this here, that, so far as it seemed reasonably, practicably and economically feasible and possible

for us to go, in attempting relatively to view equities as a basis of establishing rights for disposition purposes (and without such an establishment by us we recognize no legal or direct rights as existing or being subject to be claimed to any part of such funds), and on the basis that it appeared to us that this would substantially, on the realities involved, serve the general purposes of the Natural Gas Act, the following steps were allowed to be taken in the situation: (a) We permitted each of the distributors, who had put rate increases into effect in relation to Northern Natural's actions under the stay, to receive back from Northern Natural, together with interest, the amount which had been collected from it by Northern Natural, with such funds to be held and disposed of by the distributor in accordance with our immediate directions. (b) We established and recognized a right in such gas consumers as were still patrons of the distributor to be given the benefit, in the form of a credit to their account, of such amount, together with interest, as they had been charged by the distributor in increased rates by virtue of the operation of the stay granted Northern Natural, subject to the deduction of any necessary expenses of administration that we might direct. (c) We declared that we would allow each distributor its reasonable and approved cost or expense in calculating and making such account credits for the benefit of its present firm customers, as an instrumentality or conduit of the Court in effecting distribution, out of that part of the refund, and interest received from Northern Natural, derived from payments made by those who had ceased to be customers of the distributor, with any deficit in cost or expense of making such distributions, that might remain, to be charged against or come out of the amount of the refund that otherwise, under our order, would go to the existing customers. (d) We intended subsequently, after the granting of such allowances, to direct any balance of funds in the distributor's hands, from rate increases made by it against its firm customers, by virtue of Northern Natural's action under the stay, where the customer had ceased to be a patron of the distributor, to be disposed of and applied in some appropriate manner that would in our judgment serve to benefit generally the ultimate consumers of gas in the community or area involved, as a general class. (e) We ordered such distributors as had made increased-rate collections from industrial, interruptible or contract customers to refund to such customers the amounts collected and interest received thereon from Northern Natural— it having been represented to us, as indicated in our previous order, 215 F.2d at page 898, that the distributors had an obligation, as a matter of express or implied agreement with all of such customers, to make refunds of these sums in any event, if they should be collected by the distributors from Northern Natural, and we having accordingly given recognition to and established rights in favor of such industrial, interruptible or contract customers in relation to the stay fund, on the basis of these appealing equities and the ready administrability of any rights established by us in recognition thereof.

■ 8. The term present patron or customer, as used in our previous order, appears from the reports filed by the distributors to have been the subject of flexible interpretation or application in relation to the calculations which they have made. Our order of October 7, 1954, was intended definitively to fix and give recognition to the status of present or existing firm customers as of that date, and thus meant those firm customers who on October 7, 1954 were still users of the distributor's gas and subject to billing therefor. Our order contemplated that it would be possible generally to make refunds to such customers by a crediting of their accounts. Apparently, however, some of such customers have since ceased to be so. But since the term present patron or customer was related to the date October 7, 1954, and our order created or established rights in the individual members of this class on the basis of their existing status as of that date, we feel that we can not now properly or justifiably undertake, as a subse-

quent incident of distribution convenience, to affect or change the individual status and rights so established, from then-existing class membership, just because some of those who were given rights on the basis of their being customers on October 7, 1954 may thereafter have ceased to be so. Furthermore, any such attempted fluidity in regard to the term present patron or customer would give rise to a lack of uniformity in the class rights created, because refunds, as a matter of crediting accounts, necessarily would not be capable of being effected by the different distributors all on a single date.

9. The problem facing in relation to the handling or satisfying of the established or decreed rights of such persons, from their having been existing customers on October 7, 1954, but having since ceased to be so, is merely one of increased administrative difficulty, but not of the same degree as would exist in relation to any attempted establishment of rights for the more numerous, more scattered and smaller-payment class who had ceased prior to October 7, 1954 to be patrons of the distributor. It simply requires that, instead of crediting the accounts of such persons, checks be issued and mailed by the distributor to them, if they still are local residents or if their addresses otherwise are known to the distributor. In case the address of any such person is unknown to and not discovered by the distributor, the money belonging to such person by virtue of our order of October 7, 1954, will be required to be accounted for by the distributor to the Clerk of this Court, as provided for in the next following paragraph hereof. The reasonable cost of issuing and mailing a check to any such person not subject to account crediting, whose address is known to the distributor, as well as the expense of any reasonable inquiry which the distributor may facilitatingly and cooperatively see fit, although it is, of course, not intended by this order to be required, to make as to the address of any such person, may be deducted by the distributor from the amount due such person individually, beyond the amount which is being allowed the distributor under paragraph numbered 12 of this order for the calculation generally of refund amounts as to all of its firm customers existing on October 7, 1954, and the crediting contemplated by us of such amounts to customers' accounts. Any such deduction, however, made from the refund amounts of such persons as have since October 7, 1954 ceased to be customers of the distributor, as expense of issuing and mailing check to any such person of known address, or of making inquiry as to any such person's address (in case the distributor facilitatingly sees fit to make such inquiry) will be subject to examination and approval by the Court in connection with the final report provided for in paragraph numbered 15 hereof.

10. Where the addresses of any such persons, as are referred to in the preceding paragraph, shall continue to remain unknown to the distributor, the distributor, at the time of the filing and as part of its final report, provided for in paragraph numbered 15 hereof, shall make payment of all such amounts, for which no checks have been issued and mailed by the distributor, or for which any issued and mailed checks have been returned to the distributor by the Post Office Department because of undeliverability, after deduction of any amount authorized by paragraph numbered 9 hereof, to the Clerk of this Court, by check issued to the order of the Clerk, in the total amount of all such sums remaining unrefunded to firm customers existing on October 7, 1954, together with a list of the names, in alphabetical order, for each separate city or general locality involved, to the extent that such cities or localities are given separate identity in the distributor's operations and records, of all such unreached persons (both natural and corporate), the local address of each as appearing upon the distributor's records at the time such person ceased to be a customer after October 7, 1954, with the amount opposite each name (principal and interest to be

lumped together and not separately stated) to which each such person is entitled under our order of October 7, 1954 and the provisions of this order.

11. Some of the distributors seem from their reports to have regarded the term present patron or customer as also limitatively having application, for purposes of their obligation to make refunds, to their interruptible, industrial or contract customers, the same as to their firm customers. Our order of October 7, 1954 is, we think, without any basis for such a view or position on the part of any distributor. We made no distinction in relation to interruptible, industrial or contract customers of a distributor, as to whether they had or had not ceased to be patrons or customers on October 7, 1954, such as was made by us in relation to ordinary or firm customers. This was in part because of the representations made or understanding conveyed to us, in connection with the hearing related to our order of October 7, 1954, as referred to in paragraph numbered 7(e) of this order, regarding the obligation then claimed by the distributors to exist in favor of all such customers on the part of the distributors, and the equitable appeal that by reason thereof seemed to us to exist in our transmuting this asserted obligation of the distributors into the status of an established right in favor of all such customers to the part of the stay

fund derived from the increased charges made against them. Moreover, on the realities of our making no distinction between them, in respect to whether they were or were not present customers at the time of our order, such as was done in the case of firm customers or domestic users, there could not either, we think, be said to exist the same degree of administrative problems and difficulties in the effecting of workable distribution, in that interruptible, industrial or contract customers would not ordinarily be, as seemed to us so substantially probable in the case of domestic users who had, within a relatively short period, ceased to be customers of the distributor, persons of community transiency or not readily locatable address, and having in controlling measure made relatively trivial amounts of rate-increase payments.

12. For making calculation, and effecting the crediting to customer accounts, of the amounts which we are allowing the firm customers of the distributors, as existing on October 7, 1954, to receive in refunds, in accordance with this and our previous order, the distributors will be allowed the following amounts, in full of all costs and expenses of accomplishing distribution through such crediting, which amounts we hereby find to be fair and reasonable allowances, as to each and all of the distributors, on the circumstances of the entire situation:

Central Electric & Gas Co. .................the sum of $22,500.00

Central Natural Gas Co. ...................the sum of $   900.00

Elkhorn Valley Gas Co. .....................the sum of $   275.00

Interstate Power Co. .......................the sum of $   840.00

Iowa Public Service Co. ...................the sum of $19,000.00

Minneapolis Gas Co. .......................the sum of $ 8,500.00

Minnesota Natural Gas Co. .................the sum of $ 1,200.00

Nebraska Natural Gas Co. ..................the sum of $   800.00

Western States Utilities Co. ..............the sum of $   600.00

We have tried in fixing the allowances so made to be responsibly fair in relation to the situation of each distributor. At the same time, we have not been unmindful—and we feel that this element is properly entitled to be taken into account by us—that there is involved to each distributor, in being permitted to make refunds to its customers, instead of having outside machinery set up by the Court to accomplish such a distribution, a direct benefit and value to the distributor in its customer and public relations, because of the greater good will which it would seem that a refund made by the distributor direct to a customer would foster, over the receipt by the customer of such a refund from outside judicial machinery, in which the distributor was left wholly out of any repayment contact with the customer. One distributor, Northwestern Light & Power Co., has waived the making of any allowance to it for costs and expenses in making such refunds, but it will, of course, be required to file a final report under paragraph numbered 15 of this order, the same as the other distributors.

13. Payment of the amount allowed to each distributor, by paragraph numbered 12 hereof, is hereby authorized to be made by such distributor to itself out of the funds in its hands derived from the increased-rate payments made by firm customers of the distributor, who had ceased before October 7, 1954, to be patrons of it, together with the interest applicable thereto, received from Northern Natural. In the case of any distributor, where the allowance made in paragraph numbered 12 exceeds the amount of such funds and interest in the distributor's hands, the distributor is hereby authorized to pay to itself the deficit or balance in the allowance made out of the total amount of the refunds that otherwise would go, under our order, to the firm customers of the distributor, who still were patrons of it on October 7, 1954,—the amount so in general deducted to be prorated among all of such customers, who were still patrons on October 7, 1954 (and regardless of whether they may since have ceased to be so) as an equal or flat charge against the refund sums of each, with the balance remaining in each case to constitute the extent of the refund right and the amount thereof, to which each of those customers of the distributor is entitled to receive, who are capable of having distribution made to them as an account credit. Refund sums not able to be so distributed as an account credit, because the customer has ceased to be a patron after October 7, 1954, as referred to in paragraphs numbered 8 and 9 hereof, will be further individually subject, in any distribution facilitatingly undertaken to be effected of them by the utility distributors, to the deductions authorized to be made in these circumstances under paragraph numbered 9. None of the allowances hereby made, however, for cost or expense of distribution, nor the deduction authorized by paragraph numbered 9, has any application to the distributions required to be made to interruptible, industrial or contract customers of the distributors— the distributors being obliged to bear the whole expense of these distributions themselves, no matter what is necessary to be done to accomplish them, pursuant to the express or implied obligation otherwise existing between them and such customers, as previously represented to us, to restore such sums to these customers, if they were permitted to come into the distributors' hands from Northern Natural and were allowed by us to be so returned.

14. In the case of any distributor, where the allowance made for cost and expense of effecting distribution, by paragraph numbered 12 hereof, is less than the amount in the distributor's hands from the increased-rate payments made by firm customers of the distributor, who had ceased before October 7, 1954, to be patrons of it, and the interest thereon, received from Northern Natural, all as referred to in paragraph numbered 13 hereof, the distributor shall make payment of the balance remaining in its hands of such funds to the Treasurers of the respective cities, towns or villages in which the customers, from whose rate increases the funds were derived, consti-

tuted patrons of the distributor. Any such general balance will be permitted to be prorated and paid over to such Treasurers respectively, as a class, on the basis of the ratio of the number of customers which the distributor presently has in each of such municipalities (that is, as of the time such payments to the Treasurers are in wind-up made) to the total number of present customers which it has in all the municipalities so involved. Such payment to a Treasurer shall be made by check, accompanied by a letter stating in substance or effect, with such elaboration as the distributor may think desirable, that the payment is being made by leave of court, in relation to funds remaining in the distributor's hands from gas-rate increases put into effect against domestic customers of the distributor, in cases where such customers have ceased to be patrons of the distributor before October 7, 1954, and that the funds are being turned over for use or application by the city (town or village) counsel (or board) to any municipal purpose that it may see fit, but with the hope expressed on the part of the court that the funds may be made to serve, in some direct and feasible manner, to assist the council (or board) in its local responsibility and task of looking after the interests generally of the ultimate consumers of gas in the community. The amounts derived from any such firm customers, whose service was received from the distributor outside the limits of any corporate city, town or village, if there have been such customers, shall be added to and included in the total amount of such funds to be prorated and distributed, as above provided for, by payment to the Treasurers of such cities, towns or villages as are entitled to receive checks hereunder. The court believes and finds that the disposition of any such residuary balance of funds in this manner will, with as much substantiality, serve the general purposes of the Natural Gas Act, as any other disposition which it is reasonably possible, with administrative practicality and as a matter of accomplishable result, to make. Incidentally, it may be noted that such a residuary disposition, proposed at one stage in these proceedings by one of the distributors in relation to its own situation, was in general given endorsement by counsel for the Federal Power Commission. It further may be observed that, in imposing such a requirement upon the distributors, the Court has taken into account the additional element of cost or expense that may be involved to the distributors, in carrying out this paragraph of the order, as a part of the allowances made to such distributors as are subject thereto, in the allowances fixed by paragraph numbered 12.

15. A final report, in quadruplicate, with verification made by a qualified officer or other qualified employee of the distributor, shall be filed by each of the 10 distributors, here involved, with the Clerk of this Court, within six months of the date of this order, containing the following: (a) A statement that refunds of the amounts payable under this order have been duly made to all interruptible, industrial and contract customers, who were such at any time during the stay period. (b) A statement that all refunds due hereunder, capable of being effected to firm customers, who were such on October 7, 1954, by means of crediting their account, have been made. (c) A statement that a list in quadruplicate, prepared in accordance with the requirements of paragraph numbered 9 hereof, has been furnished to the Clerk of this Court, as to the firm customers of October 7, 1954, who have since ceased to be so and whose addresses are unknown to the distributor, and that payment has been duly made to the Clerk of the amount due such persons in refund under this order. (d) A statement of the total amount deducted, if any, under the provisions of paragraph numbered 9 hereof, both for issuing and mailing checks to firm customers of known address, who have ceased to be patrons of the distributors since October 7, 1954, and for any inquiry made as to the unknown addresses of any such previous customers, aggregately stated for all such previous customers, with an indication also of the total number of such persons against whom any such deduction has been made.

894

(e) A statement that all funds received by the distributor from Northern Natural Gas Co., subject to distribution to firm customers, as of October 7, 1954, under the provisions of this order and our order of October 7, 1954, have been duly disposed of, by account creditings, and by issuing and mailing checks or making payment to the Clerk of this Court, in accordance with paragraph numbered 9 hereof. (f) A statement (if the distributor is subject to the requirement of paragraph numbered 14 hereof) that the payments directed by paragraph numbered 14, to Treasurers of cities, towns and villages, in the manner prescribed therefor, have been made. (g) A statement that the distributor has no balance of principal or interest, received from Northern Natural Gas Co., remaining in its hands, which is subject to distribution under any of the provisions of this order. (h) A request for a discharge of the distributor, on the basis of the statements made in its report, from any further obligation or liability, in relation to its responsibility to the Court, for the funds and interest received by it from Northern Natural Gas Company.

16. The provisions of paragraph numbered 15 hereof, in so far as requirements (a), (g) and (h) of that paragraph are concerned shall also apply to the six distributors (Iowa Electric Light & Power Company, Iowa-Illinois Gas & Electric Company, Iowa Power & Light Company, Minnesota Valley Natural Gas Company, Northern States Power Company, and Peoples Gas & Electric Co.) who have previously been Intervenors herein, and who had a duty imposed upon them by our order of October 7, 1954, 215 F.2d at pages 898 and 901, to make refunds to their interruptible or industrial customers and to file a report showing such payments to have been made, in the event that such a report may not heretofore have been filed by them.

17. The distributors and their counsel generally have given the Court excellent cooperation in attempting to lighten the heavy administrative burden of the Court normally incident to effect-ing any such distribution as is here involved, and the Court expresses its appreciation for the cooperation and assistance so given, in enabling it to effect a practical and terminative disposition of the accumulated funds, while at the same time making the disposition one that would be in harmony with and would appropriately and substantially serve the purposes of the Natural Gas Act generally.

18. The Court reserves jurisdiction to make such further orders as may be necessary or expedient to terminate and close the entire matter.

All of the foregoing is hereby duly ordered.