**NORTHERN NATURAL GAS COMPANY, a Corporation, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

No. 15424.

United States Court of Appeals Eighth Circuit.

May 14, 1957.

Rehearing Denied June 24, 1957.

F. Vinson Roach, Omaha, Neb., for Northern Natural Gas Co.

George C. Pardee, Omaha, Neb., for Metropolitan Utilities Dist. of Omaha.

Raymond A. Smith, Council Bluffs, Iowa, for Council Bluffs Gas Co.

Hubert C. Jones, Des Moines, Iowa, for Iowa Power & Light Co.

Lloyd J. Marti, Lincoln, Neb., for Central Electric & Gas Co.

John F. Gaston, Jr., Cedar Rapids, Iowa, for Iowa Electric Light & Power Co.

Ned Willis, Perry, Iowa, for North Central Public Service Co.

S. F. Wadden, Sioux City, Iowa, for Iowa Public Service Co.

A. C. Sidner, Fremont, Neb., for Nebraska Natural Gas Co. and Elkhorn Valley Gas Co.

Clayton E. Kline, Topeka Kan., for Kansas Power & Light Bldg.

W. Russell Gorman, Asst. Gen. Counsel, Federal Power Commission, Washington, D. C., for Power Commission.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

Northern Natural Gas Company has made application for an order directing distribution of the sums collected by it under our stay order of November 18, 1955. Operation of the stay was terminated by us as of December 27, 1956, following our affirmance of Opinion and Order No. 281 of the Federal Power Commission, in Interstate Power Co. v. Federal Power Commission, 8 Cir., 236

F.2d 372, and denial by the Supreme Court of certiorari thereto, in Northern Natural Gas Co. v. Federal Power Commission, 352 U.S. 967, 77 S.Ct. 352, 1 L.Ed.2d 321.

Our stay order had permitted Northern Natural to continue its previous rates in effect against its distributors in the territorial area involved, pending review of the Commission's order, subject to certain conditions, one of which was that "Northern Natural Gas Co. shall make refund of the amounts so collected, in such manner and to such persons as the Court may direct, with interest thereon at such rate as the Court may fix, not exceeding six per cent per annum, and with Northern Natural to bear the expense, or such part thereof as the Court may require, of making such refunds and of effecting a complete disposition of the accumulated fund".

The matter has been duly heard on the application made by Northern Natural, and on the responses, answers, requests, claims and showings of the various distributors who have made appearance in the proceeding, and on the suggestions made by the Federal Power Commission in relation thereto.

The Court, after consideration, hereby finds, concludes, holds and orders as follows:

1. The total of the sums collected by Northern Natural under our stay order is $1,561,887.13, received from distributors as follows:

|   |   |   |
|---|---|---|
| (a) | Central Electric and Gas Co. | $351,594.09 |
| (b) | Central Natural Gas Co. | 11,639.45 |
| (c) | City of Guthrie Center, Iowa | 2,700.52 |
| (d) | City of Harlan, Iowa | 6,272.14 |
| (e) | City of Hawarden, Iowa | 2,075.41 |
| (f) | City of Ponca, Nebraska | 1,842.75 |
| (g) | Council Bluffs Gas Co. | 75,114.00 |
| (h) | Elkhorn Valley Gas Co. | 3,770.34 |
| (i) | Iowa Electric Light & Power Co. | 112,948.90 |
| (j) | Iowa-Illinois Gas & Electric Co. | 61,076.80 |
| (k) | Iowa Power & Light Co. | 292,571.46 |
| (l) | Iowa Public Service Co. | 179,093.13 |
| (m) | The Kansas Power & Light Co. | 64,417.92 |
| (n) | Metropolitan Utilities District | 343,980.00 |
| (o) | The Nebraska Natural Gas Co. | 33,408.42 |
| (p) | North Central Public Service Co. | 12,105.99 |
| (q) | Town of Coon Rapids, Iowa | 2,451.55 |
| (r) | Town of Remsen, Iowa | 2,003.30 |
| (s) | Village of Pender, Nebraska | 2,820.96 |

2. Northern Natural will be required to make or effect distribution of each of these sums, as hereinafter directed, together with 6 per cent interest thereon per annum, from the respective dates that the monies accumulatingly have come into its hands, to February 17, 1957, when the present application for an order of distribution was made by it to the Court. Should Northern Natural become responsible for any acts of delay in effecting such distribution, the Court may by supplemental order require payment of interest by it beyond the date specified.

3. Our stay order declared that, in the granting of the stay, we were influenced in part by "the question of where ultimate consumers are likely to be left in the situation and how they can best be protected generally". We pointed out that it appeared from the information before us that all of the distributors involved, with perhaps a local exception, were going to continue "to charge their consumers the same rate

as before, until the * * * review proceeding is disposed of, without giving them the benefit of the rate reduction which would accrue to the distributors, if Northern Natural's request for a stay should be denied"; that, without a stay being granted, ultimate consumers thus would, in case the Commission's order was affirmed, have been and be without protection in the situation; but that, if a stay was granted, and if the Commission's order should be affirmed, "Northern Natural can be required by us to make refund [of the sums collected] to ultimate consumers". We included a provision in our order, however, that, "if any distributor * * * shall, since the issuance of Opinion and Order No. 281 (of the Commission) have reduced its rates to its consumers, pursuant to and in an amount equivalent to the reduction accruing to it thereunder, or if any such distributor shall hereafter take such action, it may make application for consideration by the Court of a partial vacating or nullifying of the operation of the stay order in its application to such distributor".

4. The stay order further specifically stated that the funds which we were allowing to be collected by Northern Natural, through our continuing in effect its previous rates, were, "in their accumulation, holding and contemplated disposition, * * * intended to be for the benefit of ultimate consumers as a class, but no legal right in relation to their distribution shall exist in or become vested in any individual consumer to any part thereof, except as such a right may hereafter be established and decreed by the Court, in relation to persuading equities and administrative practicalities".

5. As regards the distributors and the amounts enumerated in sub. (c), (d), (e), (f), (n), (q), (r) and (s), of paragraph numbered 1, supra, Northern Natural is hereby directed to make payments of such sums, and interest thereon as above provided, to the respective distributors, unconditionally—all of such distributors being municipalities or municipal corporations, and the making of refund to them in their public status and capacity being in our opinion (as discussed by us in a preceding case, Northern Natural Gas Co. v. Federal Power Commission, 8 Cir., 215 F.2d 892, 897–898) sufficiently able to serve in the situation involved the underlying aim of the Natural Gas Act, 15 U.S.C.A. § 717 et seq., to protect in broad gauge ultimate consumers of Natural gas from excessive charges, as such charges could have a part of their source in interstate distribution.

6. As to the distributors and the amounts set out in sub. (a), (g), (h), (i), (j), (k), (l), (m), (o) and (p), of paragraph numbered 1, supra, Northern Natural will be required to make or effect distribution of such sums, to the ultimate consumers (as the class is fixed by paragraph numbered 7 hereof) of the respective distributors, in the amount which each such ultimate consumer has been required to pay of the accumulated sum, together with interest thereon as above provided. Northern Natural will be permitted to make or effect such distributions through the various distributors involved, by making arrangements with the distributors to calculate the amount which has been paid by each of its ultimate consumers (as fixed by paragraph numbered 7 hereof) and the interest allocable thereto, and crediting the account of the customer therewith on the records of the distributor. Northern Natural shall have the right to turn the funds over to the distributors as such account creditings are completed by the distributors and in the amount thereof. Northern Natural shall pay to the distributors the amount of the costs or charges made by them, except that any charge made by a distributor for services rendered in so effecting refunds to ultimate consumers, shall be subject to examination and determination by the Court, if it is unreasonable.

7. For purposes of the distribution herein contemplated, and in its administrative significance here, the term "ultimate consumer" has reference to

and means those patrons or customers of the distributor who still are users of its gas, on the date of this order, and so subject to billing by the distributor. See Northern Natural Gas Co. v. Federal Power Commission, 8 Cir., 225 F.2d 886, 889. Our stay order, as has been previously indicated, was specifically made to provide that, in the event of an affirmance of the Commission's order, "the funds, * * * in their accumulation, holding and contemplated disposition, are intended to be for the benefit of ultimate consumers as a class, but no legal right in relation to their distribution shall exist in or become vested in any individual consumer to any part thereof, except as such a right may hereafter be established and decreed by the Court, in relation to persuading equities and administrative practicalities". What we said in a previous similar situation, Northern Natural Gas Co. v. Federal Power Commission, 8 Cir., 215 F. 2d 892, 900, may be repeated here: "The task of trying to locate persons who are no longer customers or patrons of the distributor involved, the heavy expense incident thereto, and the impossibility in the end of finding a substantial part of such persons, as shown by the court's experience in similar cases in the past, make such an attempt, in relation to the small amounts usually involved in the refunds to such persons, and to the judicial burden resulting, impractical, unfeasible, and unnecessary to an accomplishment generally of the purposes of the Natural Gas Act." We accordingly fix and limit the rights of patrons or customers of the distributors, in and to any part of the stay funds, upon the basis of their being within the term "ultimate consumers", in the class use and significance herein accorded it as a matter of administrative practicality and necessary judicial-distribution reality, and hold that this recognition and establishment, and the making of refund to ultimate consumers in accordance with the provisions of paragraph numbered 6 and this paragraph, will be sufficiently accomplishive of the object of, and the

Court's responsibility under, the stay order, and the relationship of the stay fund to the aim of the Natural Gas Act.

■ 8. In providing for the distribution directed by paragraphs numbered 6 and 7, we have given consideration to the requests and attempts of some of the distributors to have the funds turned over to them, with the right to retain them for their own use and not have to make distribution of them to their patrons and customers. Most of these requests and attempts are predicated upon the contention in substance that the rates which they have allowed to exist against their customers through the stay period are too low under present economic conditions and that the awarding to them of the funds would therefore be fair and equitable and would not give rise to any windfall in their favor. Some distributors have sought to have us examine figures and showings as to their rates, costs and earnings. These are not questions with which we have any concern either generally or in the present proceeding. As our stay order indicated, it appeared from the information before us that the distributors were not going to pass on to their consumers, while the review proceeding was pending, the reduction which the Federal Power Commission's order directed Northern Natural to make to the distributors, in its presumable relationship to their existing rates against their consumers, and it was to protect ultimate consumers in this seeming, prima facie right to a benefit of the reduction, as related to Northern Natural's charge against the distributor, that our stay order was in part granted. This was clearly stated in the order, and there was no basis for any distributor to hope or expect that the unreduced amounts so collected by it from its consumers and paid in under the stay order would be refunded to it, as a matter of whether it would have been warranted in charging its consumers a higher rate than its existing one, on the basis of factors going beyond the price paid by it to Northern, as that component was entitled to be

regarded to have been properly included in its existing rate. Certainly, the reduction in Northern Natural's charge ordered by the Commission affords as such no legal or equitable basis for the distributors to urge that they are entitled to a refund of the stay monies. This is as far as it is necessary for our consideration to go. The consideration of whether a distributor is in other respects or on other grounds entitled to charge its consumers a higher rate is for the local legislative body which has the power to deal with its rates, and not for us. And equally, the matter of what distribution should be made of the stay funds collected under our order is, of course, for us and not for the city councils with which the distributors are dealing, so that we can hardly, in our judicial responsibility, be greatly guided or affected by the mere declarations which some of the distributors have obtained from their city councils, that it is agreeable to or recommended by the latter that we make refund of the stay funds to the distributors. The requests and claims of the various distributors for refunds to them, as against their ultimate consumers, are accordingly denied.

9. As to Central Natural Gas Co. and the funds referred to in sub. (b) of paragraph 1 hereof, that distributor made showing to us on January 9, 1956 that it had before our stay order was entered reduced its rates to its consumers in the amount of the saving which would be effected by it under the Commission's order and pursuant to that order and thus was within the operation of paragraph numbered 6 of our stay order, providing for a right "to make application for consideration by the Court of a partial vacating or nullifying of the operation of the stay order in its application to such distributor". Central Natural Gas Co. may, within 15 days from the date of this order, make showing under oath, to be filed in the office of the Clerk, that it has continued through the period covered by the stay to allow such rate reduction to remain in effect to its consumers, or, if it has made any subsequent increase in its rates against its consumers, to state when the increase was placed in effect and what part of the funds held by Northern Natural was paid by it subsequent to the increase. Further order will thereafter be entered in relation to the funds involved.

10. As to Iowa-Illinois Gas & Electric Co., referred to in sub. (j) of paragraph numbered 1 hereof, there is involved, in addition to the amount ordered distributed to its consumers under paragraph numbered 6 hereof, the sum of $12,498.20, which was not paid by it to Northern Natural under the stay order, because it had previously made a reduction to its consumers in the amount of the reduction ordered against Northern Natural by the Commission's order and pursuant to that order, and had requested the Court to vacate or nullify the operation of the stay order as to it. This reduction was allowed to remain in effect until December 15, 1955. Iowa-Illinois Gas & Electric Co. is hereby declared not to be required to make payment of such sum of $12,498.20 to Northern Natural, and Northern Natural is hereby released from any responsibility for it in relation to its obligation under our stay order and this order of distribution.

11. If, on the distribution required by paragraphs numbered 6 and 7, hereof, it shall develop that there are any patrons or customers of a distributor who have ceased to be such prior to the date of this order, and who thus are not within the class use of the term "ultimate consumers", to whom refunds are required to be made, Northern Natural shall pay the amounts which such patrons or customers as are outside the class would have been entitled to receive, including interest, to the Clerk of this Court, to be held by the latter, subject to the Court's further direction. The Court may, in its discretion, give consideration to a use of such funds, in whole or in part, to help pay the costs of distribution, with which Northern

Natural has been made chargeable hereunder. Or the Court may direct such other application or distribution of such funds, if any, as it deems appropriate in serving the general purpose of the Natural Gas Act in relation to the stay order, and as will enable complete disposition to be effected of the stay matter and its incidents.

12. Report shall be made by Northern Natural to the Court, on or before four months from the date hereof, of the progress which has been made in effecting the distribution herein provided for. The Court will, and reserves jurisdiction to enter all further orders necessary to complete distribution of the stay funds. Final report shall be made by Northern Natural after the distribution required of it has been completed, with such provisions and showing as the Court may at that time direct.

All of which is so ordered.