**NORTHERN NATURAL GAS COMPA-
NY, a Corporation, Petitioner,**

v.

**·FEDERAL POWER COMMISSION,
Respondent.**

**Nos. 14706, 14733, 14743.**

United States Court of Appeals
Eighth Circuit.

March 31, 1958.

Norman A. Miller, of Clausen, Hirsh & Miller, Chicago, Ill., for Certain-teed Products Corp.

W. B. Waterman, Davenport, Iowa, for Iowa-Illinois Gas & Electric Co.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

Iowa-Illinois Gas & Electric Co. has had refund made to it by Northern Natural Gas Co. of the amount which Northern was permitted to collect from it in increased rates under our stay order herein and was subsequently required to return to it under our distribution orders, appearing in 215 F.2d 892 and 225 F.2d 886. A part of this refund was related to gas purchased by Iowa-Illinois for resale to Certain-teed Products, one of its industrial, interruptible customers.

Certain-teed has filed a petition in the stay-fund proceedings, seeking a holding from us that Iowa-Illinois should, under our distribution orders or on equitable considerations, be required to make payment over of this part of the refund to it. Iowa-Illinois has moved to dismiss the petition, as not stating a claim upon which relief can here be granted.

In our distribution order, 215 F.2d at page 898, Iowa-Illinois was held to be entitled to receive from Northern, and to have the right to retain, the amount which had been collected from it generally in increased rates under our stay order, except that it was required to make refund to those of its industrial, interruptible customers whose rates it had assumed to increase during the stay period under escalator clauses in their contracts. Iowa-Illinois had made showing at that time that it had not during the stay period increased its rates to any other of its customers.

Certain-teed was not one of the industrial, interruptible customers of Iowa-Illinois, whose contract contained an escalator clause, and no rate increase was made by Iowa-Illinois against it during the stay period. But it is Certain-teed's contention that a rate increase upon which Iowa-Illinois had insisted, and which Certain-teed had agreed to pay, when it entered into a renewal contract with Iowa-Illinois approximately seven weeks before the granting of our stay, should be treated as equivalent in the situation to the increase which Iowa-Illinois made during the stay period against those of its industrial interruptible customers whose contracts contained an escalator clause.

Legally, however, the contract thus made between Certain-teed and Iowa-Illinois had no incidence or ancillariness to our stay order. It was entered into and became operative before Northern even had made application to us for a stay. If Certain-teed, in agreeing to pay Iowa-Illinois a higher rate for gas than under its preceding contract, was assuming that such a stay application might perhaps be made, it could still hardly claim to know what our ruling upon the application in the situation would be. And if Certain-teed was intending to contract in relation to the contingency of an application for a stay being made and being granted in favor of Northern, it would seem that it would in all likelihood have insisted that the agreement to pay the rate fixed therein be not made absolute but be subjected to some protective provision in relation to the stay and refund possibilities.

As a matter of fact, Certain-teed does not claim that the question of an application for a stay being made and being granted was in any way a matter of negotiation, condition, or even mention, between the parties in arriving at the agreement. It requests us, however, to make collateral examination of the circumstances and history of the situation and to evaluate the comparative equities therein, and on this basis to declare that the increased rate provided for in the contract must necessarily have involved an anticipatory inclusion of the amount which Iowa-Illinois was thereafter required to pay to Northern under our stay order, and which we subsequently ordered Northern to refund to it, upon our

affirmance of the Federal Power Commission's order.

Iowa-Illinois, on the other hand, beyond its challenging of our right to make any such examination in respect to the agreement, asserts that the rate provided for in the contract did not in fact have any relationship to the possibility of a stay order being applied for and granted as to the Commission's order, but rested entirely upon other factors. Its letter to Certain-teed, leading up to the renewing of their contract relationship, written some five weeks before the old contract would expire, had stated that it was necessary for it to charge a higher rate, over that agreed upon in the old contract a year previously, "due to increased cost of gas, increases in taxes, and other operating expenses" since the date of that contract.

Whatever may have been the reasons or factors underlying the rate called for by the new contract, this is not in the legal situation involved a matter for our concern, nor is it one as to which we can be asked to engage in collateral examination, for purposes of this distribution proceeding. The contract is not shown to have been entered into, with any legal relationship or ancillariness as to our stay order, as between the parties. We therefore may not, either directly or indirectly, touch its terms and obligation.

■ Beyond this, any attempt on our part to order Iowa-Illinois to make refund to Certain-teed, as a matter of general equity and without any direct ancillariness to our stay order, would in the situation be legally equivalent to or have the significance of a fixing or adjusting by us of the rates between distributor and customer, which is not a field that it is within the judicial province to prescriptively or pretextually invade. Cf. Northern Natural Gas Co. v. Federal Power Commission, 8 Cir., 245 F.2d 447, 452.

■ But, even without the existence of the legal barriers just discussed, we do not believe that the equitable considerations relevant to a stay distribution would otherwise have entitled Certain-teed's claim here to any consideration. The relevant equities on a stay-fund distribution are the injuries or prejudices which the stay order has caused. The concern of a court in such a situation is simply to restore, as nearly and as proximately as possible, the status which would have obtained, if the stay had not been granted. In the language of Mr. Justice Frankfurter, in his concurring opinion, in Federal Power Commission v. Interstate Natural Gas Co., 336 U.S. 577, 586, 69 S.Ct. 775, 780, 93 L.Ed. 895, "The task, then, for the Court of Appeals is to reconstruct, as far as it can possibly be done, what would have happened had no fund accrued", and "to place the parties in the position which they would have had had there not been a postponement of the effective date" of the Federal Power Commission's order.

Here, if there had been no application made to us for a stay, or if we had denied the application, Certain-teed's position under the contract, legally and economically, would be precisely that in which it now stands. And Iowa-Illinois in that situation also would have occupied exactly the same position to which our order of refund from Northern has now restored it. Thus, the prejudice produced by the granting of our stay order was, so far as Certain-teed's contract is concerned, one that had been created against Iowa-Illinois and not against Certain-teed. Certain-teed is seeking, not to have an injury or prejudice corrected, which we have done it, but to have us reach out in legal gratuity and use the injury or prejudice which our stay order has occasioned to Iowa-Illinois in irrelevant equitable benefit (stay-wise) to it.

The motion of Iowa-Illinois to dismiss is granted, and the petition of Certain-teed is hereby dismissed.